## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

**UNITED STATES OF AMERICA**

v.                                                      Criminal No. **3:13CR141**

**LAMAR KEITH GARVIN,**

   Petitioner.

### MEMORANDUM OPINION

   Lamar Keith Garvin, a federal inmate proceeding *pro se*, submitted this motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence ("§ 2255 Motion," ECF No. 102). In his § 2255 Motion, Mr. Garvin asserted that he was entitled to relief upon the following grounds:

| | |
|---|---|
| Claim One | "Lawyer was ineffective for failing to communicate plea offer to me from the Government during the plea window." (§ 2255 Mot. 4.)[1] |
| Claim Two | Counsel failed to provide effective assistance during the plea process because: (a) counsel failed to provide Mr. Garvin with advice as to what sentence he would receive if he pled guilty versus what sentence he would receive if he went to trial (b) counsel failed to explain to Mr. Garvin that he could plead to some counts and pursue a trial on other counts. (*Id.* at 5.) |
| Claim Three | "Lawyer was ineffective at my sentencing hearing and had an actual conflict of interest . . . ." (*Id.* at 6.) |
| Claim Four | "Lawyer was ineffective for failing to investigate for an obvious defense." (*Id.* at 8.) |

Mr. Garvin later moved to add a fifth claim pursuant to *Johnson v. United States*, 135 S. Ct. 2551 (2015):

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system for all citations to the record, including transcripts. The Court corrects the spelling, punctuation, and capitalization in the quotations from Mr. Garvin's submissions and the record.

Claim Five   In the wake of *Johnson v. United States*, 135 S. Ct. 2551 (2015), Mr. Garvin's convictions for use of a firearm during the commission of a crime of violence (Count 2 and 4) must be vacated.

(ECF No. 121, at 1.)

Mr. Garvin's first four claims contend that his counsel, Craig Sampson, Esq., provided ineffective assistance of counsel that caused Mr. Garvin to, *inter alia*, forego a favorable plea agreement and coerced Mr. Garvin into involuntarily pleading to crimes of which he is innocent. Mr. Garvin's claims are without merit. For example, with respect to Claim One, the record reveals that Mr. Garvin's stubborn refusal to timely acknowledge his guilt and accept the attendant sentences, rather than any ineffective assistance, prevented Mr. Garvin from receiving the benefit of the Government's initial plea offer.

## I. INITIAL PROCEDURAL HISTORY

### A. The Robberies

Between September 12, 2012 and March 25, 2013, Mr. Garvin and other coconspirators robbed several jewelry stores in Maryland and Virginia. (ECF No. 70 ¶ 6.)[2] "[Mr.] Garvin was considered the 'front man' in all the robberies except for the Zales Jewelers in Spotsylvania, Virginia. [Mr.] Garvin would walk into the stores, make conversations with the clerk, and have them open a case. The coconspirators would then come into the stores carrying or brandishing firearms." (*Id.* ¶ 7.) The Presentence Report reveals the following with respect to these robberies:

**Zales Jewelry Store – Baltimore County, Maryland**
On September 12, 2012, Mr. Garvin and Michael Anthony Richardson robbed the Zales Jewelry store in Owings Mills, Maryland. (*Id.* ¶ 9.) Although Richardson brandished a gun, it was not a real gun. (*Id.* ¶¶ 7, 9.)

**Kay Jewelers Store – Henrico County, Virginia**
On November 13, 2012, Mr. Garvin, Michael Anthony Smith, and another individual robbed the Kay Jewelers Store in Henrico, Virginia, "while brandishing a firearm." (*Id.* ¶ 11.)

---

[2] The Court omits the emphasis from the quotations from the record and the parties' submissions.

### Zales Jewelry Store – Spotsylvania, Virginia

On January 12, 2013, Mr. Garvin, Richardson, and Veronica Smith, attempted to rob a Zales Jewelry Store in Fredericksburg, Virginia. (*Id.* ¶ 13.) Richardson was armed with a handgun. (*Id.*) The jewelry store "clerk jumped the counter and subdued Richardson causing him to drop the firearm." (*Id.*) Smith and Mr. Garvin fled, grabbing the dropped firearm and a ring that belonged to the store. (*Id.*)

### Littman Jewelers – Short Pump, Virginia

On February 18, 2013, Mr. Garvin and two coconspirators robbed Littman Jewelers in Short Pump, Virginia. (*Id.* ¶ 19; ECF No. 43, at 2–3.) "The two coconspirators brandished firearms during the robbery." (ECF No. 70 ¶ 19.)

### Finks Jewelers – Stony Point, Virginia

On March 25, 2013, Mr. Garvin and two coconspirators robbed a Finks Jewelers in the Stony Point Fashion Park in Richmond, Virginia. (*Id.* ¶ 21.) Two of the coconspirators brandished firearms. (*Id.*)

### B.      The Initial Charges

On August 20, 2013, Mr. Garvin and Veronica Smith were named in a two-count Indictment. (ECF No. 13.) Count One charged Mr. Garvin and Smith with the attempted Hobbs Act robbery of the Zales Jewelry Store in Spotsylvania, Virginia, on January 12, 2013. (*Id.* at 1.) Count Two charged Mr. Garvin and Smith with use and carry of a firearm during and in relation to the crime of violence that was the subject of Count One. (*Id.* at 2.)

On November 4, 2013, Mr. Garvin was arrested by the United States Marshal's fugitive task force. (ECF No. 70 ¶ 23.) In the process of being transported to this Courthouse, Mr. Garvin made several incriminating statements to federal agents. Agent Sensabaugh read Mr. Garvin his *Miranda* rights, and Mr. Garvin indicated that he understood those rights. (Jan. 13, 2014 Tr. 10.) Agent Sensabaugh informed Mr. Garvin that two of his coconspirators were in custody and "were making statements against him," (Jan. 13, 2014 Tr. 18), and they had video evidence of the "use of a firearm in the robberies. To which [Mr. Garvin] immediately replied, I never used a gun." (Jan. 13, 2014 Tr. 18–19.) Agent Sensabaugh explained to Mr. Garvin that "there was video evidence of him walking into a jewelry store, bending down and picking up the gun that his co-

conspirator had dropped." (Jan. 13, 2014 Tr. 19.) Mr. Garvin "immediately replied, 'I never pointed a gun at anyone. Never brandished it.'" (Jan. 13, 2014 Tr. 19.)[3] Mr. Garvin also told Agent Sensabaugh that he turned to armed robberies to pay back someone he owed for a drug-related debt. (Jan. 13, 2014 Tr. 21–22.) Agent Sensabugh then asked Mr. Garvin about the "the progression of merchandise" that Mr. Garvin stole. (Jan. 13, 2014 Tr. 22.) Mr. Garvin "interjected, 'What do you mean? Why I went from rings to Rolex?'" (Jan. 13, 2014 Tr. 22.) Mr. Garvin then explained it was significantly more profitable to steal the Rolexes. (Jan. 13, 2014 Tr. 23.)

On November 5, 2013, Craig Sampson, Esq., was appointed to represent Mr. Garvin. (ECF No. 27.) On November 13, 2013, Mr. Garvin was arraigned on the original Indictment. (ECF No. 30.) Mr. Garvin was informed that he faced up to twenty years of imprisonment for Count One and five years to life imprisonment for Count Two. The matter was set for a jury trial on January 13, 2014.

On December 30, 2013, Mr. Garvin, by counsel, filed a Motion to Suppress his statements to the ATF agents. (ECF No. 35.)

On January 13, 2014, the Court conducted a hearing on the Motion to Suppress. (ECF No. 40.) The Court denied the Motion to Suppress with respect to the statements set forth above. (*Id.*)

On January 21, 2014, Mr. Garvin was named in a seven-count Superseding Indictment. (ECF No. 43.) Counts One and Two in the Superseding Indictment charged the same conduct that was the subject of Counts One and Two of the original Indictment. (ECF No. 43, at 1–2.) Count Three charged Mr. Garvin with the Hobbs Act robbery of the Kay Jewelers on November 13, 2012. (*Id.* at 2.) Count Four charged Mr. Garvin with using, carrying, and brandishing a firearm during

---

[3] Mr. Garvin's admission about picking up the gun pertained to the attempted robbery that was the subject of Counts One and Two of the original Indictment.

4

and in relation to the crime charged in Count Three. (*Id.*) Count Five charged Mr. Garvin with the Hobbs Act robbery of the Littman Jewelers on February 18, 2013. (*Id.* at 2–3.) Count Six charged Mr. Garvin with the Hobbs Act robbery of the Finks Jewelers on March 25, 2013. (*Id.* at 3.) Count Seven charged Mr. Garvin with conspiracy to commit Hobbs Act robbery from September 12, 2012 through March 25, 2013. (*Id.* at 4.) On January 30, 2014, Mr. Garvin was arraigned on the Superseding Indictment. (ECF No. 47.) The matter was set for a jury trial on May 12, 2014. (*Id.*)

### C.     Mr. Garvin's Guilty Plea and Sentencing

On May 12, 2014, on the morning of trial, Mr. Garvin refused to change out of his jail clothes into civilian clothes and sought to discharge Mr. Sampson as counsel. (May 12, 2014 Tr. 3–5.) The Court denied his request. (May 12, 2014 Tr. 10.) After the jury was seated and Mr. Garvin heard the Government's opening statement, Mr. Garvin changed his mind and decided to plead guilty to the charges in the Superseding Indictment. (*See* Aug. 15, 2014 Tr. 28–29.)

Prior to sentencing, Mr. Garvin moved to withdraw his plea and have new counsel appointed. (ECF No. 74.) After hearing from the parties and Mr. Garvin, the Court denied Mr. Garvin's motions. (ECF No. 81.) Thereafter, the Court sentenced Mr. Garvin to thirty years and one day of imprisonment. (ECF No. 83, at 3.) The sentence consisted of five years on Count Two and twenty-five years on Count Four, to be served consecutively, and a term of one day on Counts One, Three, Five, Six, and Seven to run concurrently with each other. (*Id.*)

After an unsuccessful appeal, (ECF No. 94), Mr. Garvin filed his present § 2255 Motion.

### II. ALLEGED INEFFECTIVE ASSISTANCE OF COUNSEL

#### A. Claim One

In Claim One, Mr. Garvin contends that:

My attorney, Mr. Sampson, never communicated to me or showed me the plea that

5

the prosecutor said she gave [to] Mr. Sampson to give to me at my sentencing hearing, nor did he communicate a plea of any kind to me, he only told me, "if I plead guilty to Counts One and Two I would get 15 years."

(§ 2255 Mot. 4.) As explained below, the record, including Mr. Garvin's own submission, reflect that he was well aware of the prosecution's initial plea offer, that Mr. Sampson provided competent advice with respect to that offer, but that Mr. Garvin refused the offer while it was available because he obstinately believed he should not spend but a few years in jail for his crimes.

## 1. The Initial Plea Offer

During the sentencing proceedings, the prosecutor outlined the plea offer that had been available to Mr. Garvin. The prosecutor had "offered to Mr. Garvin that he could plead guilty to the Spotsylvania robbery, which was the robbery charged in the original indictment, and the 924(c) count, and take responsibility in his statement of facts for the other robberies that he was involved in." (Aug. 15, 2014 Tr. 16.) According to the prosecutor,

> So late in December of 2013, Mr. Sampson called and said, look, Mr. Garvin doesn't want to have to take responsibility for all of these. . . . But can't he just plead to the indictment as is? I said, certainly he can. But I will indict him on the other robberies at the next grand jury. . . .
> He asked, well, is there any way he can just plead to these and not get indicted? I said, no, there is absolutely no way we will not indict these other robberies, unless he takes responsibility for them in the plea agreement.
> It was at that point there were, apparently, more discussions between Mr. Garvin and Mr. Sampson. And the motion to suppress was filed.

(Aug. 15, 2014 Tr. 18.)

Mr. Garvin acknowledges that the prosecutor offered to let him plead to Counts One and Two of the original Indictment and Mr. Sampson provided a detailed prediction of what sentence Mr. Garvin would likely receive under the Sentencing Guideline. (ECF No. 102–1 at 9–10.) Mr. Garvin, however, disagreed with Mr. Sampson's prediction that Mr. Garvin would receive a 10-year sentence on Count One, to be followed by a 5-year sentence on Count Two. (*See id.* at 10–11; ECF No. 74, at 4.) Specifically, before his sentencing, Mr. Garvin wrote a letter to the Court

6

wherein he acknowledged that Mr. Sampson had encouraged him to take a plea to Counts One and

Two and cooperate with Government. (ECF No. 74, at 3–5.) Mr. Garvin, however, refused to do

so because he believed that Mr. Sampson had significantly over calculated his likely sentence for

Counts One and Two and obstinately believed that he could avoid any sentence enhancements for

his other relevant criminal conduct. Mr. Garvin complained:

> Mr. Sampson came to Pamunkey Reg. Jail to see me for the first time and
> said to me if I plead guilty to Count 1 and Count 2, I would receive 15 years
> . . . . He put my offense level at 32 and said include 5 years for the gun. I told Mr.
> Sampson that was a lengthy sentence for a first-time offender and that I needed
> time to think about it. I later asked a law student at Pamunkey Reg. Jail about
> offense levels and he said attempted robbery was probably around 15–20 and not
> 32, especially for someone that has no criminal background. . . . [Mr. Sampson]
> lied and tried to mislead me to take the 15 yrs. and if I don't he scared me with the
> words of if I take it to trial, I would get a lot of time and that [was] what I feared
> on May 12, that I would get life in prison if I took it to trial.
>
> . . . .
> If I plead guilty to Count 1 and 2 straight out at my pre-trial hearing or
> afterwards
>
> Count 1        (pre-sentence report) offense level 20    33–41[months]
>                2 yrs
> Count 2        5 yrs for the gun
> Total 7 yrs
>
> Mr. Sampson said that the prosecution wanted me to talk and that I would
> time off if I cooperated with the ATF and the prosecution . . . .

(*Id.* at 3–5 (some calculations omitted); *see also* ECF No. 79, at 3–4.)[4]

### 2. Analysis

To demonstrate ineffective assistance of counsel, a convicted defendant must first show

that counsel's representation was deficient, and, second, that the deficient performance prejudiced

the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient

performance prong of *Strickland*, a convicted defendant must overcome the "'strong presumption'

that counsel's strategy and tactics fall 'within the wide range of reasonable professional

---

[4] As it turns out, Mr. Sampson's initial prediction of an offense level of 32 was fairly
accurate. Mr. Garvin's Total Offense Level was 30. (ECF No. 70 ¶ 75.)

assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, the Court need not determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

The two-part *Strickland* standard applies to claims arising out of the plea-bargaining process. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985); *see Lafler v. Cooper*, 556 U.S. 156, 162 (2012). "During plea negotiations defendants are 'entitled to the effective assistance of competent counsel.'" *Lafler*, 566 U.S. at 162 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). Generally, claims of ineffective assistance of counsel during the plea process fall into three categories. First, "the [complete] failure of a defense attorney to timely inform his client of a plea offer constitutes unreasonable professional assistance." *United States v. Brannon*, 48 F. App'x 51, 53 (4th Cir. 2002) (citing *United States v. Blaylock*, 20 F.3d 1458, 1465–66 (9th Cir. 1994)); *see Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2003). Second, a defense attorney's inaccurate advice or misinformation in conveying a plea offer may constitute deficient assistance. *Brannon*, 48 F. App'x at 53 (citing *Paters v. United States*, 159 F.3d 1043, 1047–48 (7th Cir. 1998)); *see United States v. Merritt*, 102 F. App'x 303, 307–08 (4th Cir. 2004); *Wolford v. United States*, 722 F. Supp. 2d 664, 688 (E.D. Va. 2010) (concluding that counsel was deficient where he "misled [the petitioner] into believing that she had some possibility of prevailing at trial on the basis of several non-viable defenses"). Third, incomplete advice in conveying a plea also may provide a basis for a claim of ineffective assistance of counsel. *See Wolford*, 722 F. Supp. 2d at 689 (concluding that "counsel's incorrect and incomplete legal advice to [the petitioner] during the

plea negotiation process was objectively unreasonable" (citing *Strickland*, 466 U.S. at 688)); *see also United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992) ("[A] defendant has the right to make a reasonably informed decision whether to accept a plea offer." (citing *Hill*, 474 U.S. at 56–57; *Von Moltke v. Gillies*, 332 U.S. 708, 721 (1948))).

Mr. Garvin's claim here does not fit neatly into any of the above categories. Although Mr. Garvin contends that counsel completely failed to convey the Government's plea offer, the record conclusively shows that is not so. Rather, the record reflects that Mr. Garvin knew that he had the option to plead to the original Indictment and likely receive a sentence of roughly fifteen years of imprisonment. Mr. Garvin also was aware that he could possibly reduce that sentence by cooperating with the Government. Mr. Garvin also knew that if he rejected that offer and went to trial, he would likely spend the rest of his life in jail.

Mr. Garvin's submissions suggest that he believed that Mr. Sampson provided incomplete or inaccurate information in conjunction with the plea process. Mr. Garvin, however, fails to clearly articulate how this is so. The record does not indicate that Mr. Sampson provided Mr. Garvin with inaccurate advice about his sentencing exposure with or without a plea. Rather, the record indicates that both Mr. Sampson and the Court provided Mr. Garvin with accurate advice in that regard, but that Mr. Garvin stubbornly refused to accept the lengthy sentences he faced for his numerous criminal acts. Furthermore, nothing in the record suggests that Mr. Sampson provided Mr. Garvin with inaccurate advice with respect to his chances of prevailing at trial. In the end, however, it is unnecessary to assess whether Mr. Garvin has demonstrated deficiency on the part of counsel because the record conclusively forecloses Mr. Garvin's ability to demonstrate prejudice.

In the plea context, to demonstrate prejudice, Mr. Garvin must show that "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Merzbacher*

9

*v. Shearin*, 706 F.3d 356, 363 (4th Cir. 2013) (quoting *Hill*, 474 U.S. at 59). Mr. Garvin must demonstrate "a reasonable probability" that he would have accepted the plea offer, at the time it was available, if he "had . . . been afforded effective assistance of counsel." *Missouri v. Frye*, 566 U.S. 134, 147 (2012); *see Merritt*, 102 F. App'x at 307. Such a showing requires a convicted defendant to "present some credible, non-conclusory evidence that he would have [accepted the proffered plea] had he been properly advised." *Sanders v. United States*, 341 F.3d 720, 722 (8th Cir. 2003) (quoting *Engelen v. United States*, 68 F.3d 238, 241 (8th Cir. 1995)).[5]

Mr. Garvin's own testimony demonstrates that he was unwilling to accept the offer to plead guilty to Counts One and Two and face a likely sentence of 15 years of imprisonment, while that offer remained open. During his sentencing proceedings, Mr. Garvin repeatedly acknowledged his unwillingness to accept the offer to plead to the original Indictment with its near certain sentence of fifteen years:

> I wanted someone to hear this case. At first, I wasn't going to say nothing. If Ms. Norman[6] would have gave me seven, eight, nine years. I think 15 years, I said, I said ain't nothing I ever done in my life that I deserve 15 years. Nothing.
> . . . .
> . . . If Mrs. Norman would have gave me five, six, seven years, well, look, I can do that. But when you start talking about 15, 20, years, I say, I can't do that right there, man. You are taking me away from my children. I have a five and six year old. I couldn't do it. But there is no way.

(Aug. 15, 2014 Tr. 58, 62.)

The only time during these criminal proceedings when Mr. Garvin demonstrated a willingness to acknowledge his guilt and accept the inevitable lengthy sentence that would follow

---

[5] In this regard, Mr. Garvin cannot predicate his claim on his assertion of a willingness to agree to a plea of guilty to Counts One and Two, provided that, such a plea shielded him from accountability for other relevant criminal conduct. The record plainly reveals no such plea offer was available to Mr. Garvin. *Cf. Lafler*, 566 U.S. at 168 (observing a defendant cannot demonstrate prejudice with respect to a plea offer "[i]f no plea offer is made").

[6] Ms. Norman was the prosecuting Assistant United States Attorney.

was on the morning of his trial. *Cf. Sanders*, 341 F.3d at 723 ("A defendant who maintains his

innocence at all the stages of his criminal prosecution and shows no indication that he would be

willing to admit his guilt undermines his later . . . claim that he would have pleaded guilty if only

he had received better advice from his lawyer." (citing *United States v. Stevens*, 149 F.3d 747, 748

(8th Cir. 1998); *Engelen*, 68 F.3d at 241)); *see Chesney v. United States*, 367 F.3d 1055, 1060 (8th

Cir. 2004). However, even after the entry of his guilty plea, at his sentencing, Mr. Garvin

disavowed his guilt of the charges in the original Indictment:

> Well, like the Spotsylvania. I never -- I didn't have anything to do with
> that. Never had anything to do with that. I was in another store when that was
> taking place. I walked out and seen it started happening. I had nothing [to] do with
> that. I told [Mr. Sampson] that. He didn't try to fight that. I had -- I ran over there
> and seen the gun, picked it up, put it in my pocket. They said willfully
> . . . unlawfully went in there and tried to take this from people. I didn't willfully,
> unlawfully went into nowhere. I'm not even on the camera as taking anything or
> attempting to take anything.
>
> . . . .
> What I am saying is, is they said I gave him, I gave him a real gun. I ain't
> give no one no real gun at no time. At no time. But, I am charged with – I am
> charged with these guns.

(Aug. 15, 2014 Tr. 10, 11.) It is plain to the undersigned that Mr. Garvin was not willing to plead

guilty to Counts One and Two prior to the Government's filing the Superseding Indictment.

> THE COURT: And it sounds like you and he had some differences of
> opinion about the strategy that ought to be pursued in this case. You didn't want to
> plead guilty, and [Mr. Sampson] thought it was in your best interest to do that; is
> that right?
> THE DEFENDANT: No, I didn't want to plead guilty. I wanted to take the
> first two counts to trial.
> THE COURT: Right. And then you got a superseding indictment, I think,
> isn't that correct? Wasn't there a second indictment in this case? Yes.

(Aug. 15, 2014 Tr. 12.) Indeed, even during these post-conviction proceedings, Mr. Garvin

continues to insist that he did not want to plead guilty "to Counts 1, 2, and 4 that I have always

said I was innocent of . . . . In Count 1 and 2, I never gave Richardson a firearm, nor was it

supposed to be an attempted robbery or robbery . . . ." (ECF No. 102–1, at 15, 16.) Given these

circumstances, "the Court finds 'palpably incredible' [Mr. Garvin's] conclusory assertion that he would have accepted the" prosecution's offer to allow him to plead guilty to the charges in the original Indictment and simultaneously admit to his other relevant criminal conduct. *United States v. Hill*, No. 3:07CR407, 2017 WL 4544673, at \*7 (E.D. Va. Oct. 11, 2017) (quoting *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005)). Accordingly, Claim One will be DISMISSED.

## B. Claim Two

In Claim Two, Mr. Garvin contends that, on the morning of his trial,

> Mr. Samson told me he didn't know what I would receive if I went to trial and then he told me he didn't know what I would receive if I pleaded guilty, so I weighed my options at that moment and elected to plead to a 7-count indictment, without the benefit of plea agreement. Mr. Sampson never explained to me that I could plead to some counts and take some counts to trial that I was innocent of.

(§ 2255 Mot. 5.) Mr. Garvin complains that:

> Instead of Mr. Sampson advising me to plead guilty to some counts that I was guilty of or the one that I believed the government could prove and then plead not guilty to Counts 1, 2, and 4 that I have always said I was innocent of, he advised me to plead guilty without a plea agreement resulting in a 30-year sentence.

(ECF No. 102-1, at 15.)

In the context of a guilty plea, the Supreme Court has modified the second prong of *Strickland* to require a showing that "there is a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. Of course, in conducting the foregoing inquiry, the representations of the defendant, his lawyer, and the prosecutor during the plea proceedings, "as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977). "Thus, in the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always palpably incredible and

12

patently frivolous or false." *Lemaster*, 403 F.3d at 221 (internal citations omitted) (internal

quotation marks omitted). Accordingly, "in the absence of extraordinary circumstances, the truth

of sworn statements made during a Rule 11 colloquy is conclusively established, and a district

court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily

relies on allegations that contradict the sworn statements." *Id.* at 221–22.

Mr. Garvin's contentions that he was unaware that he faced a mandatory 30-year sentence

by pleading guilty and that he wished to contest Counts One, Two, and Four because he was

innocent of those charges are patently frivolous and false. *See id.* at 221. The Court ensured the

Mr. Garvin understood that he had "an absolute right to go to trial" on any of the charges. (May

12, 2014 Tr. 22.) Additionally, counsel and the Court made sure that Mr. Garvin understood that

he faced a mandatory 30-year sentence by pleading guilty:

> MR. SAMPSON: Well, I am sorry.
> Judge, there is actually, what you had -- what I believe you have actually technically said was that he gets five years on the firearms charge, which is correct. However, there is a second charge. And if Mr. Garvin pleads today to all seven charges straight up, the second charge is going to bring a 25-year minimum mandatory consecutive, which actually means he is pleading to 30 years of minimum mandatory consecutive time if that is what he does. Because it is so much time, I wanted to make sure that there is no question that Mr. Garvin understands that is what he and I discussed.
> THE COURT: Mrs. Norman, do you understand that is the situation?
> MS. NORMAN: Yes, Your Honor. In fact, I was going to interject when it was my turn.
> But Count Two carries a minimum mandatory of five years because no firearm was actually brandished. Count Four carries a minimum mandatory term of 25 years up to maximum of life.
> THE COURT: All right.
> MS. NORMAN: Both sentences must run consecutively.
> THE COURT: All right. Do you understand that to be the case, Mr. Garvin?
> THE DEFENDANT: Yes, sir.

(May 12, 2014 Tr. 36–37.)

13

Additionally, the Court made sure that Mr. Garvin understood what the Government was required to prove with respect to each offense and Mr. Garvin agreed that the Government could prove him guilty beyond a reasonable doubt with respect to each offense. (May 12, 2014 Tr. 37–39.) Thereafter, the prosecution then proffered its evidence which demonstrated Mr. Garvin's guilt of each count of the Superseding Indictment. (May 12, 2014 Tr. 40–46.) That proffer carefully distinguished between when Mr. Garvin and his coconspirators utilized a pellet gun (*see, e.g.*, May 12, 2014 Tr. 42) and when they used "a real firearm." (May 12, 2014 Tr. 43.) At the conclusion of the proffer, Mr. Garvin acknowledged that the facts recited by the Government were true. (May 12, 2014 Tr. 46.)

The foregoing record along with the facts and the circumstances recited in conjunction with Claim One, foreclose Mr. Garvin's contention that he was prejudiced by some lack of advice by counsel because he was innocent of Counts One, Two, and Four and wished to proceed to trial on those charges. Claim Two will be DISMISSED.

## C. Claim Three

In Claim Three, Mr. Garvin asserts that Mr. Sampson "was ineffective at [his] sentencing hearing and had an actual conflict of interest . . . ." (ECF No. 102–1, at 18.) Mr. Garvin notes that,

> I sought withdrawal of my guilty pleas based on Mr. Sampson's ineffective assistance of counsel. Because Mr. Sampson could not, without conflict, in fact did not argue my motion (for withdrawal of my guilty pleas) based on his own ineffectiveness, I was left to represent myself without the assistance of counsel.

(*Id.* at 20.)[7]

---

[7] Mr. Garvin contends that Mr. Sampson was deficient for failing to argue, *inter alia*, that Mr. Garvin was coerced into committing the robberies. Mr. Garvin fails to demonstrate that Mr. Sampson performed deficiently by failing to present these arguments. Moreover, given the sentence imposed, Mr. Garvin fails to demonstrate that he was prejudiced by the lack of these arguments.

The Sixth Amendment guarantee of effective assistance of counsel

"requires meaningful compliance with the duty of loyalty and the duty to avoid conflicts of interest, and a breach of these basic duties can lead to ineffective representation." *United States v. Tatum*, 943 F.2d 370, 375 (4th Cir. 1991). When a petitioner premises his ineffective assistance claim on the existence of a conflict of interest, the claim is subjected to the specific standard spelled out in *Cuyler v. Sullivan*, 446 U.S. 335, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980), instead of that articulated in *Strickland*.

*United States v. Nicholson ("Nicholson I")*, 475 F.3d 241, 249 (4th Cir. 2007). Specifically,

[t]he *Sullivan* standard requires a showing that (1) petitioner's lawyer operated under a "conflict of interest" and (2) such conflict "adversely affected his lawyer's performance." *[Sullivan*,] 446 U.S. at 348, 100 S. Ct. 1708. If the petitioner makes this showing, prejudice is presumed and nothing more is required for relief.

*United States v. Nicholson ("Nicholson II")*, 611 F.3d 191, 205 (4th Cir. 2010) (citing *Sullivan*, 446 U.S. at 349–50).

Nevertheless, "[a]nalysis of claims of actual conflicts of interest frequently do not proceed in two distinct steps; rather '[t]he two requirements . . . are often intertwined.'" *Jones v. Polk*, 401 F.3d 257, 267 (4th Cir. 2005) (second alteration and omission in original) (quoting *Tatum*, 943 F.2d at 375). This is so because "an 'actual conflict of interest' means 'a conflict *that affected counsel's performance*—as opposed to a mere theoretical division of loyalties.'" *Id.* (quoting *Mickens v. Taylor*, 535 U.S. 162, 171 (2002)). Thus, the Supreme Court has emphasized that "the *Sullivan* standard is not properly read as requiring inquiry into actual conflict as something separate and apart from adverse effect. An 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance." *Mickens*, 535 U.S. at 172 n.5; *see Nicholson II*, 611 F.3d at 195 n.2.

To establish a conflict of interest, Mr. Garvin must demonstrate that his and Mr. Sampson's "interests diverged with respect to a material factual or legal issue or to a course of action." *Nicholson II*, 611 F.3d at 215 (citation omitted)). To establish an adverse effect, Mr. Garvin must

15

satisfy, by a preponderance of the evidence, the three-part standard announced in *Mickens v. Taylor*, 240 F.3d 348 (4th Cir. 2001), *aff'd* 535 U.S. 162 (2002). *Nicholson I*, 475 F.3d at 251–52 (citing *Mickens*, 240 F.3d at 361).

> First, the petitioner must identify a plausible alternative defense strategy or tactic that his defense counsel might have pursued. Second, the petitioner must show that the alternative strategy or tactic was objectively reasonable under the facts of the case known to the attorney at the time of the attorney's tactical decision. In the language of *Tatum*, the petitioner must show that the alternative strategy or tactic was "clearly suggested by the circumstances." *Tatum*, 943 F.2d at 376. Finally, the petitioner must establish that the defense counsel's failure to pursue that strategy or tactic was linked to the actual conflict.

*Mickens*, 240 F.3d at 361.

Here, Mr. Garvin fails to demonstrate that any potential conflict of interest adversely affected Mr. Sampson's performance. Mr. Garvin contends that, but for his conflict, Mr. Sampson would have argued in support of Mr. Garvin's motion to withdraw Mr. Garvin's guilty plea based on his own ineffectiveness.[8] Mr. Sampson declined to do so, not because of a conflict, but because he had provided Mr. Garvin with effective assistance. In other words, such a "tactic was [not] objectively reasonable under the facts of the case known to [Mr. Sampson] at the time" that Mr. Garvin sought to withdraw his plea. *Id.*; *United States v. Dehlinger*, 740 F.3d 315, 323 (4th Cir. 2014) (citing *Mickens*, 240 F.3d at 361) (indicating that if a reasonable attorney without a conflict would make the same decision as counsel with the conflict, a defendant cannot prove an adverse effect). The Court found as much when it denied Mr. Garvin's motion to replace Mr. Sampson and Mr. Garvin's Motion to Withdraw His Guilty Pleas. (Aug. 15, 2014 Tr. 23–29; 35–38.) Accordingly, Claim Three will be DISMISSED.

---

[8] Mr. Sampson supported Mr. Garvin's Motion to Withdraw His Guilty Pleas, but he did not offer any argument in support of the motion. (Aug. 15, 2014 Tr. 29.)

16

## D. Claim Four

In Claim Four, Mr. Garvin contends that Mr. Sampson "was ineffective for failing to investigate for an obvious defense." (§ 2255 Mot. 8.) Mr. Garvin suggests that he could have successfully defended against his guilt on Counts One, Two, and Four.[9] Thereafter, Mr. Garvin provides a lengthy tale as to why he is innocent of Counts One, Two, and Four. (ECF No. 102–1, at 23–38.) This tale is palpably incredible and false given Mr. Garvin's sworn admissions during his plea hearing. *See Lemaster*, 403 F.3d at 221. Accordingly, Mr. Garvin fails to demonstrate deficiency or prejudice. Claim Four will be DISMISSED.

## III. JOHNSON-RELATED CLAIM

In Claim Five, Mr. Garvin argues that his conviction under 18 U.S.C. § 924(c) in Counts Two and Four must be vacated in light of the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015). Prior to addressing the substance Mr. Garvin's argument, it is appropriate to clarify the predicate crime of violence charged for each of these counts. Count Two of the Superseding Indictment charged Mr. Garvin with using a firearm in conjunction with attempted Hobb's Act robbery charged in Count One. (ECF No. 43, at 1–2.) Count Four charged that, "[o]n or about November 13, 2012," Mr. Garvin "did knowingly and unlawfully use, carry, and brandish a firearm during and in relation to a crime of violence, to wit: interference with commerce by robbery in violation of 18 U.S.C. § 1951." (*Id.* at 2.) This language sufficiently

---

[9] Mr. Garvin also faults Mr. Sampson for failing to conduct an audit of the value of the jewelry stolen because he contends that there "wasn't $1,000,000.00 worth of jewelry, not even close." (ECF No. 102–1, at 37). This claim is subject to summary dismissal. *See Sanders v. United States*, 373 U.S. 1, 19 (1963) (finding summary denial of § 2255 motion appropriate where petitioner "stated only bald legal conclusions with no supporting factual allegations"). During his guilty plea, Mr. Garvin acknowledged that the Government had accurately calculated the amount of loss for each of the jewelry stores mentioned.

identified the November 13, 2012 Hobbs Act robbery charged in Count Three as the predicate crime of violence.[10] (*Id.*)

In *Johnson*, the Supreme Court held "that imposing an increased sentence under the residual clause of the Armed Career Criminal Act [("ACCA")] violates the Constitution's guarantee of due process." 135 S. Ct. at 2563. Subsequently, in *Welch v. United States*, 136 S. Ct. 1257 (2016), the Supreme Court held that "*Johnson* announced a substantive rule [of law] that has retroactive effect in cases on collateral review." *Id.* at 1268.

Mr. Garvin contends that after *Johnson*, the offense of Hobbs Act robbery can no longer qualify as a crime of violence under 18 U.S.C. § 924(c)(3), and thus, his convictions for Counts Two and Four must be vacated. Although Mr. Garvin was not sentenced pursuant to ACCA, he asserts that the residual clause of § 924(c) is materially indistinguishable from the ACCA residual clause (18 U.S.C. § 924(e)(2)(B)(ii)) that the Supreme Court in *Johnson* struck down as unconstitutionally vague.

Title 18 U.S.C. section 924(c)(1)(A) provides for consecutive periods of imprisonment when a defendant uses or carries a firearm in furtherance of a crime of violence. The baseline additional period of imprisonment is five years. 18 U.S.C. § 924(c)(1)(A)(i). If the defendant brandishes the firearm, the additional period of imprisonment increases to at least seven years. *Id.* § 924(c)(1)(A)(ii). And, if the defendant discharges the firearm, the additional period of imprisonment increases to at least ten years. *Id.* § 924(c)(1)(A)(iii).

The United States can demonstrate that an underlying offense constitutes a crime of violence if it establishes that the offense is a felony and satisfies one of two requirements. Namely,

---

[10] Mr. Garvin incorrectly states that the *conspiracy* to commit Hobbs's Act robbery charged in Count Seven was the predicate crime of violence for Count Four. Nevertheless, the Court will construe Mr. Garvin to argue that *Johnson* also invalidates Hobbs Act robbery, the predicate crime of violence for Count Four.

18

the statute defines a crime of violence as any felony:

(A) [that] has as an element the use, attempted use, or threatened use of physical force against the person or property of another [(the "Force Clause")], or

(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense [(the "Residual Clause")].

*Id.* § 924(c)(3). As explained below, Hobbs Act robbery and attempted Hobbs Act robbery both qualify as a crime of violence under the Force Clause.[11]

A defendant is guilty of Hobbs Act robbery if he or she "obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery . . . or attempts or conspires so to do . . . ." 18 U.S.C. § 1951(a). The statute defines "robbery" as

the unlawful taking or obtaining of personal property from the person or in the presence of another, against his [or her] will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his [or her] person or property, or property in his [or her] custody or possession, or the person or property of a relative or member of his [or her] family or of anyone in his [or her] company at the time of the taking or obtaining.

*Id.* § 1951(b)(1). The United States Court of Appeals for the Fourth Circuit has not reached the issue of whether Hobbs Act robbery satisfies the Force Clause. Nevertheless, as this Court has previously concluded:

a defendant "who commits Hobbs Act robbery by 'fear of injury' necessarily commits it by 'fear of physical force.'" *United States v. Standberry*, No. 3:15cr102, 2015 WL 5920008, at \*4 (E.D. Va. Oct. 9, 2015) (citation omitted). This is because "[f]ear is the operative element facilitating the taking," *id.*, and "any act or threatened act which engenders a fear of injury implicates force and potential violence," *id.* (citing *United States v. Castleman*, 134 S. Ct. 1405, 1414–15 (2014)); *see also Castleman*, 134 S. Ct. at 1416–17 (Scalia, J. concurring) ("[I]t is impossible to cause bodily injury without using force 'capable of' producing that result."). Put simply, common sense dictates that any "fear of injury" flows from the fear of physical force.

---

[11] The United States Court of Appeals for the Fourth Circuit recently concluded that the Residual Clause of § 924(c) is unconstitutionally vague. *United States v. Simms*, 914 F.3d 229, 233 (4th Cir. 2019) (en banc).

*United States v. Herstch*, No. 3:17CR92, 2017 WL 4052383, at *4 (E.D. Va. Sept. 12, 2017)

(alteration in original). Accordingly, consistent with this Court's earlier decisions, *see id.* at *5,

and decisions of many courts of appeal,[12] the Court finds that Hobbs Act robbery constitutes a

categorical crime of violence and can therefore serve as the basis for the § 924(c) charge in Count

Four. *See United States v. Carter*, No. 3:13CR04, 2019 WL 321407, at *10 (E.D. Va. Jan. 24,

2019) (denying § 2255 for identical reasoning).

For similar reasons, the attempted Hobbs Act robbery charged in Count One serves as a

valid basis for the 924(c) charge in Count Two. *United States v. St. Hubert*, 909 F.3d 335, 351

(11th Cir. 2018). As the United States Court of Appeals for the Eleventh Circuit explained:

> Like completed Hobbs Act robbery, attempted Hobbs Act robbery qualifies
> as a crime of violence under § 924(c)(3)(A)'s use-of-force clause because that
> clause expressly includes "attempted use" of force. Therefore, because the taking
> of property from a person against his will in the forcible manner required by
> § 1951(b)(1) necessarily includes the use, attempted use, or threatened use of
> physical force, then by extension the attempted taking of such property from a
> person in the same forcible manner must also include at least the "attempted use"
> of force.

*Id.* (citations omitted) (emphasis omitted); *see Hill v. United States*, 877 F.3d 717, 719 (7th Cir.

2017) ("When a substantive offense would be a violent felony under § 924(e) and similar statutes,

an attempt to commit that offense also is a violent felony.").

Lastly, the Court notes that the Fourth Circuit's recent decision in *United States v. Simms*,

914 F.3d 229 (4th Cir. 2019) does not alter the conclusion that each of Mr. Garvin's § 924(c)

convictions are predicated on a valid crime of violence under the force clause of § 924(c)(3)(A).

In *Simms*, the defendant pled guilty to conspiracy to commit Hobbs Act robbery and to brandishing

---

[12] *See, e.g.*, *United States v. Hill*, 890 F.3d 51, 60 (2d Cir. 2018); *United States v. Rivera*, 847 F.3d 847, 848–49 (7th Cir. 2017); *United States v. Buck*, 847 F.3d 267, 275 (5th Cir. 2017); *United States v. Robinson*, 844 F.3d 137, 140–41 (3d Cir. 2016); *United States v. Moreno*, 665 F. App'x 678, 681 (10th Cir. 2016) *United States v. House*, 825 F.3d 381, 387 (8th Cir. 2016); *United States v. Howard*, 650 F. App'x 466, 468 (9th Cir. 2016).

a firearm during and in relation to a "crime of violence," but later challenged his brandishing conviction on the theory that Hobbs Act conspiracy could not be considered a "crime of violence" under 18 U.S.C. § 924(c)(3). *Id.* at 232–33. Initially, the parties and the Fourth Circuit agreed that,

> conspiracy to commit Hobbs Act robbery—does not categorically qualify as a crime of violence under the [Force Clause], as the United States now concedes. This is so because to convict a defendant of this offense, the Government must prove only that the defendant agreed with another to commit actions that, if realized, would violate the Hobbs Act. Such an agreement does not invariably require the actual, attempted, or threatened use of physical force.

*Id.* at 233–34 (citations to the parties' material omitted). Thereafter, the Fourth Circuit concluded that the Residual Clause of § 924(c) is void for vagueness. *Id.* at 236.

As explained above, unlike conspiracy to commit Hobbs Act robbery, Hobbs Act robbery and attempted Hobbs Act robbery are valid crimes of violence under the Force Clause because they invariably require the actual, attempted, or threatened used of physical force. *St. Hubert*, 909 F.3d at 351. Accordingly, Claim Five will be DISMISSED.

## IV. CONCLUSION

For the foregoing reasons, Mr. Garvin's claims will be DISMISSED. Mr. Garvin's Motions for Relief under 28 U.S.C. § 2255 (ECF Nos. 102, 121, 125) will be DENIED. Mr. Garvin's Motion for Summary Judgment (ECF No. 129), Motion for Show Cause (ECF No. 130), Motion to Expedite (ECF No. 134), and Motion for Discovery (ECF No. 135) will be DENIED. The action will be DISMISSED. A certificate of appealability will be DENIED.

An appropriate Order shall issue.

Date: 19 March 2019
Richmond, Virginia

/s/
John A. Gibney, Jr.
United States District Judge